**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

OUSMANE BAH,                                                  **Docket No.: 20cv15018**

      Plaintiff

      v.                                               **COMPLAINT**
                                                             **AND JURY DEMAND**

APPLE INC.,
SECURITY INDUSTRY SPECIALISTS, INC.,
STEVEN YHAP, Individually and as an
      Employee of Security Industry Specialists, Inc.,
JOHN WOODRUFF, Individually and as an
      Employee of Security Industry Specialists, Inc.,
DETECTIVE PAUL SIEMON, Individually and as an
      Officer of the Paramus Police Department,
LIEUTENANT ROBERT OLIVE, Individually and as an
      Officer of the Paramus Police Department, and
PARAMUS POLICE DEPARTMENT,
      Defendants

                                /

### Preliminary Statement

This Complaint arises from repeated false accusations of theft made by Defendants against the Plaintiff. The thefts were actually committed by one or more impostors in Pennsylvania, New Jersey, New York, Connecticut, and Massachusetts between April 2018 and February 2019. The Plaintiff was falsely accused of numerous thefts in New Jersey and at least one apprehension in Paramus, New Jersey on May 24, 2018, which is the gravamen of this Complaint.

The Plaintiff alleges that the Defendants' investigative practices—especially, relying on unverified paper identification that expressly stated could not be used for identification purposes—were inadequate and provided no reasonable basis to accuse the Plaintiff of crimes. As such, Plaintiff contends that the Defendants made false allegations against him with reckless disregard for their truth or falsity.

By relying on the scant and unreliable evidence, failing to verifying the perpetrator's actual identity, pursuing criminal charges against the even after the perpetrator was appropriately identified, the named officers of the Paramus Police Department recklessly initiated charges against the Plaintiff without probable cause, warranting relief under 44 USC § 1983. By allowing criminal charges to proceed without

probable cause, the Paramus police provided "cover" for the private Defendants' repeated wrongful accusations against the Plaintiff throughout New England causing a chain reaction of false charges, while the actual shoplifters continued their crime spree.

Apple and SIS' reckless and malicious behavior is further evidenced by the fact that while wrongfully pursuing criminal charges against the Plaintiff, they simultaneously failed to preserve video evidence of the thefts and the impostor's true identity—evidence that would have conclusively exonerated the Plaintiff.

### Statement of the Case

A Complaint in this matter was initially filed in the Southern District Court of New York in April 2019, less than one year after the Defendants' initial defamatory acts in New Jersey. The Plaintiff initially sought damages for the corporate Defendants' defamatory acts and malicious prosecution in multiple states, including New York, Massachusetts, Connecticut, and New Jersey. While the Court left the New York claims intact, it initially dismissed allegations arising out of the Apple and SIS' conduct in other states, including New Jersey, for want of evidence (at the early pre-discovery stage) that the Defendants' conduct in those other forums had a direct nexus to the damages suffered in New York.

Discovery obtained from the corporate Defendants in June 2020 illustrates that reckless investigative practices and false charges against Ousmane Bah leveled by SIS and Apple *in New Jersey* resulted directly in false allegations and a wrongful, custodial arrest of Ousmane Bah in New York; SIS, on behalf of Apple, relayed directly the false identify to the NYPD, who later arrested the Plaintiff for thefts committed by an imposter in New York. The chain reaction began in Paramus, NJ, with Defendant Steven Yhap, an employee of SIS. The New York Complaint was amended to include the newly discovered evidence showing the direct nexus between the Defendants' acts and omissions in New Jersey and the New York arrest.

The Southern District Court denied a Motion to Amend to revive the New Jersey allegations in an order dated August 11, 2020. Because the New York court has finally declined to accept jurisdiction over the tortious acts committed in New Jersey—even after showing that the arrest in New York was initiated by Defendants' conduct in New Jersey—Plaintiff seeks relief from this Court for the tortious actions that occurred in this state. Plaintiff timely asserted these claims in New York.

### Parties

1.    Plaintiff is a natural person. He is a twenty-year-old Black male residing in New York City.

2.    Defendant Apple Inc. (hereinafter "Apple") is an American multinational corporation with its principal place of business in Cupertino, California. Apple derives substantial revenue from interstate commerce.

3.    Defendant Security Industry Specialists, Inc. (hereinafter "SIS") is a nationwide corporation with its principal place of business in Culver City, California. SIS derives substantial revenue from interstate commerce.

4.    Defendant Det. Paul Siemon was, at all times relevant to this Complaint, employed by the Paramus Police Department in the Borough of Paramus, New Jersey, and at all times relevant to this Complaint was acting in his official capacity and under color of state law.

5.    Defendant Lt. Robert Olive was, at all times relevant to this Complaint, employed by the Paramus Police Department in the Borough of Paramus, New Jersey, and at all times relevant to this Complaint was acting in his official capacity and under color of state law.

6.    This action arises out of the Defendants' negligent, reckless, and defamatory conduct that led to Mr. Bah's arrest and detainment, malicious prosecution, deprivation of civil rights, injuries to his reputation, and significant emotional distress. The events at issue occurred in multiple states, including New Jersey.

7.    Plaintiff properly brings this suit in federal court on the basis of original and diversity jurisdiction. As to the counts alleging violations of civil rights pursuant to 42 USC § 1983, this Court has original jurisdiction. As to the common law claims, this Court has jurisdiction based upon the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332; district courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and are between citizens of different states.

8.    The Corporate Defendants' connections in this forum meet the minimum contacts standard, carrying out continuous and systematic activity in the jurisdiction, allowing this Court to exercise general personal jurisdiction. *See International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). Defendant Apple has multiple store locations within the jurisdiction, including locations where the complained-of offenses occurred. Defendant SIS provides security services in Apple's New Jersey stores.

9.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because each Defendant conducts business in and can be found in this district, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## General Allegations

10. At all times relevant to this Complaint, Defendant Apple operated retail stores in King of Prussia, PA; Boston, MA; Trumbull, CT; Greenwich, CT; Paramus, NJ; Freehold, NJ; Cherry Hill, NJ; Millburn, NJ; Short Hills, NJ; Rockaway, NJ; Staten Island, NY; and Holyoke, MA.

11. On March 26, 2018, Plaintiff obtained a learner's permit for operation of a motor vehicle with the supervision of a licensed driver in New York State. The temporary form issued by the State of New York consists of a printout on ordinary copy paper with Mr. Bah's height, weight, date of birth, and eye color, but no photograph. The interim learner's permit contains a disclaimer in bold capital letters: "**THIS TEMPORARY DOCUMENT IS NOT VALID FOR IDENTIFICATION PURPOSES**." *See learner's permit, Exhibit 1, attached.*

12. At some point prior to May 2018, the Plaintiff's temporary learner's permit went missing. As by that time Mr. Bah had received his permanent copy, which was laminated plastic and had his photograph, Mr. Bah paid no mind to the absent temporary permit.

## The Montreal Theft and Detention

13. On April 16, 2016, Defendant SIS, acting on behalf of Defendant Apple, apprehended a person whom an SIS security officer claimed stole merchandise from an Apple store in Montreal, Quebec, Canada, and whom they stated was named "Ousmane Bah." That person was subsequently surrendered to the Montreal police and placed under arrest.

14. The Montreal thief was not Plaintiff Ousmane Bah and, other than being Black, did not resemble him.

15. Upon information and belief, Apple's representatives, individually and jointly, retained video or imaging evidence of the alleged thief's stealing of Apple property in Montreal.

## The Connecticut Theft and Detention

16. In Greenwich, Connecticut, in April 2018, Apple caused to be detained an individual it believed to be the Plaintiff, Ousmane Bah, accusing the individual of having stolen merchandise from one of its retail stores.

17. The Connecticut thief (hereinafter, the "impostor") was not Plaintiff Ousmane Bah and, other than being Black, did not resemble him and did not meet the physical description on the learner's permit. As an example, the impostor was 6'1" tall; the permit describes Bah as 5'7," a difference of half a foot.

18. Upon information and belief, Apple's employees and agents, individually and jointly, initially retained some portion of video evidence of the alleged thief stealing Apple property in Connecticut.

19. Upon information and belief, both Apple and SIS published this information to not only each other but also to third parties.

### The Paramus, New Jersey Theft

20. On May 24, 2018, Defendant SIS, acting on behalf of Defendant Apple, apprehended a person whom an SIS security officer claimed stole merchandise from a store in Paramus, New Jersey. That person, the impostor, was subsequently surrendered to the Paramus police and placed under arrest.

   At first the impostor attempted to resist apprehension but was eventually handcuffed by Defendant Steven Yhap.

21. Once cuffed the impostor was brought back to the store, placed into the management office, and interrogated by Yhap and "Brian," the store manager. Once back at the store, while still in handcuffs, the impostor was searched for weapons and ID.

22. Upon information and belief, the impostor was carrying the above-referenced learner's permit, which had no photograph, and described a person who did not resemble the impostor.

23. As noted above, the Paramus thief was not Ousmane Bah and, other than being Black, did not resemble him.

24. The impostor did not physically resemble the person described in the temporary learner's permit.

25. He further did not physically resemble the thief named Ousmane Bah detained in Montreal in 2016.

26. Despite the inconsistencies between the Montreal and Paramus identification; despite the instruction on the permit not to use it as a means of identification; and despite the patent physical inconsistency between Plaintiff and the impostor;

Defendant Yhap, on behalf of his employer SIS and Defendant Apple, stated that the impostor was Plaintiff Ousmane Bah to Paramus, NJ police officers.

27. Defendant Yhap identified the impostor as Ousmane Bah to the Paramus Police Department with the intent that his identification evidence would be relied upon by the officers.

28. Although Defendant Yhap knew that the impostor's appearance did not match, he failed to advise the Paramus Police Department of this material inconsistency.

29. This failure to advise the police of material information regarding a suspect is evidence of Defendants Yhap and SIS' reckless indifference to the actual identity of the impostor, and as to whether they had misidentified Ousmane Bah as a thief.

30. Defendant Yhap surrendered the impostor to an officer of the Paramus Police Department, where the impostor was taken and questioned by Defendant Det. Paul Siemon under the supervision of Defendant Lt. Robert Olive. SIS further represented to the Paramus police that the store had taken and would retain video evidence of the impostor's theft that it would provide to the Paramus police and/or prosecutors.

31. The impostor refused to make any statement to Det. Siemon. The police report nevertheless named the impostor as "Ousmane Bah" based solely upon SIS' statement as to impostor's identity and the learner's permit, which stated on its face that it did not constitute valid identification, and without conducting any independent investigation.

32. Even when the impostor misspelled "Ousmane Bah" on a booking statement, initially writing his name as "Ousama Bah" and then scratching it out before writing the correct spelling, the Paramus Police took no further steps to identify the imposter now in their custody.

33. At the time of the impostor's arrest, upon information and belief, the Paramus Police Department had access to biometric forms of identification, including but not limited to automated fingerprint scans linked to national databases, and further, had online access to the New York Department of Motor Vehicles, which had an image of the Plaintiff on file, associated with the driver's license number on the learner's permit.

34. Had Detective Siemon or Lieutenant Olive checked either of these resources, which were available to them in real time, against the identity of the impostor,

they would have learned that the thief was not the Plaintiff while the impostor was still in custody.

35.  Similarly, based upon the impostor's misspelling of his own purported name; the inconsistency between the impostor and the physical description on the learner's permit; and the warning not to rely upon the permit for identification purposes, Siemon and Olive were on notice that the impostor had presented a false identify and was not the Plaintiff.

36.  Nevertheless, neither Siemon nor Olive took any steps to confirm or verify the impostor's identity. Instead, both officers took Defendant Yhap at his word and recklessly identified the impostor as the Plaintiff, thereafter charging the Plaintiff with shoplifting.

37.  Siemon and Olive's identification and charge against the Plaintiff as the Paramus, NJ thief was therefore without probable cause.

38.  With the cooperation of Detective Siemon and Lieutenant Olive, Defendant SIS' loss prevention specialist, Steven Yhap, sought a criminal complaint against the Plaintiff to issue without probable cause. The criminal complaint was pursued against the Plaintiff even after the commencement of civil litigation against the corporate Defendants.

39.  Yhap, Siemon's, and Olive's identification of the Plaintiff as the Paramus thief without probable cause, and the ensuing criminal complaint and prosecution, were in violation of the Plaintiff's Constitutionally-protected and clearly established civil rights, including but not limited to the Fourth, Fifth, Sixth, and Fourteenth Amendments.

40.  Without probable cause, and based upon knowingly unreliable evidence, SIS and its employees, including but not limited to Defendants Steven Yhap and John Woodruff, began linking prior thefts in the region committed by the impostor to the Plaintiff.

41.  Steven Yhap, on behalf of SIS and Apple, advised police in Millburn, NJ (the jurisdiction including Short Hills) that one such prior theft, committed by the impostor, had occurred on May 5, 2018 at the Short Hills Apple Store. He further (falsely) advised police that the theft had been committed by Plaintiff Ousmane Bah. Yhap advised police that he would provide the police with video showing the Plaintiff committing the theft.

42.     SIS, as Apple's agent, began circulating "Be on the Lookout" (hereinafter "BOLO") notices with the impostor's image indicating that "Ousmane Bah," with the impostor's photo, was a "known shoplifter." Upon information and belief, these circulars were sent electronically not only to Apple store employees but also to police departments and other third parties.

### The Boston Theft

43.     On May 31, 2018, two thieves pocketed a total of twelve Apple Pencils (styluses), each worth $100, from Apple's store located on Boylston Street in Boston, MA. The thefts occurred over a five- to ten-minute period before the impostor exited the store, at which time the thefts were discovered by Apple and/or SIS, likely through technological means (see below).

44.     After the thieves exited the store and Apple and SIS were on notice of the theft, Apple employee "Sheldon," last name unknown, called the Boston Police Department and informed them that a theft had occurred and was recorded on store video. Despite the very brief time between when the thefts were discovered and the phone call to 911, Sheldon identified one of the thieves as the Plaintiff.

45.     Furthermore, within minutes of the theft, SIS loss prevention analyst John Beswick told the police that Apple (and/or SIS) had positively identified the person who had committed the thefts in Boston as Ousmane Bah.

46.     Upon information and belief, John Beswick relied upon video or photographic documentation Apple and/or SIS had in its records of the Connecticut theft, of Apple and/or SIS' false identification of the thief as Ousmane Bah, and of the New Jersey theft, falsely naming the thief as Ousmane Bah.

47.     The thief in Boston was the impostor, the same individual who committed the New Jersey theft.

48.     However, as stated previously, the impostor was not named Ousmane Bah and was not the Plaintiff. At the time of the theft, Mr. Bah was not in Massachusetts and had never visited the state.

49.     At the time the Boston thefts occurred, as noted above, both Apple and SIS knew or were constructively aware that its identification of the thief as Bah was wrong, and that they had by this time identified at least two, and possibly more, different persons as Bah.

50.     When John Beswick named the Boston thief as Ousmane Bah, he did not advise Boston police officers of the material fact that Apple and SIS' (mis)identification of Bah was conflicted or unreliable.

51.     Subsequently, on May 31, 2018, John Beswick, on behalf of SIS and as an agent for Apple, filed a police incident report identifying the Boston thief as Plaintiff Ousmane Bah.

52.     The police incident report filed by John Beswick falsely accused Ousmane Bah of committing a theft of Apple property.

53.     John Beswick filed the police incident reports accusing Ousmane Bah of the Boston thefts with the intent and expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

54.     At the time of the police reports, John Beswick indicated that Apple intended to press charges for the theft against "Ousmane Bah." Both Apple and SIS advised the Boston Police that they had positively identified the thief as Ousmane Bah by linking security camera evidence to identifications from prior thefts and committed to provide such evidence to the Boston Police.

55.     However, this video (as with all of the other videos) showed an image of the impostor and not of Plaintiff Ousmane Bah. Had the video been preserved and produced, as promised by Defendants SIS and Apple, it would have immediately exonerated Ousmane Bah of the Boston charges, and indeed of all allegations that he was an organized retail criminal and serial thief.

56.     The accusations in the police report provided by John Beswick on behalf of SIS and Apple were without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was wrong at the time that Beswick signed it. Neither of the corporate Defendants possessed trustworthy information sufficient to allow a prudent person to warrant that the Plaintiff ever committed an offense.

57.     Apple and SIS' accusation against Ousmane Bah as having stolen from their Boston store was without probable cause and was either knowingly false or made with reckless disregard for the truth, and is therefore not subject to any qualified privilege.

## Face Recognition and Apple

58.    Face (or "facial") recognition describes a computer algorithm that compares facial images to determine whether they are the same person.

59.    Apple is an innovator in facial recognition technology ("FRT"). Its most advanced smart phones use facial recognition as a means of unlocking them, so a user need only show her face to its screen to unlock the device. Apple calls this feature "Face ID."

60.    There is an enormous potential commercial market for the use of FRT in law enforcement and retail security. Law enforcement and retailers hope to use security cameras to record crimes and use FRT to quickly identify the offender based solely upon imaging, using central databases or other collections of images to connect an offender's photograph to a name, so as to allow criminal identification and apprehension in near real-time.

61.    What is known in the industry as "organized retail crime" ("ORC") is aggressively dealt with in retail stores, especially with large, sophisticated retailers such as Apple, and even more so when retailers employ large, sophisticated security firms such as SIS. Upon information and belief, the impostor's picture and information were circulated among retailers via several alert-type systems including Crimedex and MetrORCA (both online mappable databases of retail crimes).

62.    Several of Apple's technology competitors have aggressively developed FRT as a product for sale to law enforcement as a loss prevention tool or otherwise to identify unlawful actors via security cameras.

63.    However, FRT is not presently advanced enough to provide consistently reliable positive identifications, especially when such algorithms are aimed at Black persons, such as the Plaintiff. FRT has significant difficulty comparing features on Black faces.

64.    In addition to its leadership in FRT, Apple has used electronic and automated means to protect its products from shoplifting. Apple displays its products in stores without locks or tethers as a well-known marketing strategy; tethering products deters customers from playing or handling with devices and suppresses interest. To prevent theft without tying down the merchandise, Apple has created geolocation sensors and software linked to its systems (known as "iBeacon") to detect when a product leaves the store without being paid for.

65. Given Apple's use of technology to attempt to deter and prevent theft, its status as a leader in FRT, and substantial business and law enforcement interest in FRT as a crime deterrence and loss prevention product, it seems likely that Apple would adapt its facial recognition product for commercial use in its stores.

66. The identification of Mr. Bah after the Boston theft was based upon imaging and evidence previously gathered miles away by different loss prevention workers in New Jersey and Connecticut, but occurred less than ten minutes after the theft practically as the thief exited the store.

67. Somehow, during that brief interval, Apple staff and SIS personnel in Boston identified that merchandise had left the store without payment, traced the missing merchandise to an individual on store video, watched the video of the theft, and connected the Boston thief to an imposter that was "positively identified" and "known" from shoplifting that occurred one month earlier at other Apple stores, all while continuing to serve and observe numerous customers in its ordinarily busy Boylston Street store.

68. The speed with which Apple and SIS personnel related the image of the (wrongfully identified) Boston thief to the (wrongfully identified) Connecticut thief and the (wrongfully identified) New Jersey thief, virtually in real time, strongly suggests that Apple, SIS, or both, used FRT as an aid in its "positive" identification of the "known" thief as Ousmane Bah.

69. As discussed below, the NYPD represented to Bah or Bah's representatives that Apple or SIS likely used some form of FRT to identify Bah as the thief in New York.

70. Apple and/or SIS knew or should have known that FRT was an unreliable basis for identifying a thief from security video, and their use of the technology, if occurring, to identify a thief as Bah from a security video was too unreliable to reasonably claim that Bah had committed a crime, especially as it was also derived from an incorrect association of between videos of thefts and Bah's name off of a temporary learner's permit with no photo and an express warning not to use it for identification.

### **Additional New Jersey Thefts**

71. On September 18, 2018, the impostor(s) again committed theft at an Apple store, this time in Cherry Hill, NJ. The theft was reported to the Cherry Hill Police Department by Rakia Morgan, an SIS employee.

72. At that time, Morgan, on behalf of SIS and Apple, relying on the false identification by SIS in Paramus NJ, falsely advised the Cherry Hill Police Department that the individual who committed the Cherry Hill theft was the Plaintiff, Ousmane Bah. Morgan further indicated that she would return to the Cherry Hill Police Department to "sign charges against Bah" and, once again, promised to provide the police with security video of the theft.

73. On September 18, 2018, the impostor(s) stole merchandise from an Apple store in Freehold, NJ. The thief or thieves escaped and were not detained.

74. Using the false identification that Apple and SIS derived from the Paramus arrest and/or the Boston theft, and using imaging information from one or more of those events that was in Apple and SIS' possession and control, Defendants SIS and Apple again falsely and erroneously identified an impostor as Ousmane Bah and described him as a "known thief" who committed multiple thefts throughout the Northeast.

75. At this time, Defendants SIS and Apple were actually or constructively aware that at least two different shoplifters had claimed that to be Ousmane Bah and that SIS and Apple used the learner's permit without a photograph, but with a physical description that obviously did not match, to claim a positive identification.

76. On or about September 20, 2018, Defendant Yhap, acting on SIS and Apple's behalf, filed a police complaint falsely accusing Ousmane Bah of shoplifting in Freehold, NJ. On or about that time, Yhap committed to providing the police with security video showing the theft in progress.

77. The Freehold theft was committed by the impostor(s), whom Yhap once again falsely identified as the Plaintiff, Ousmane Bah.

78. Yhap filed the criminal complaint for the Freehold thefts with the intent or expectation of inducing law enforcement to charge Mr. Bah and to cause Mr. Bah to be taken into custody and made subject to prosecution.

79. The police report filed by Yhap on behalf of SIS and Apple was without probable cause, as the Defendants had actual or constructive knowledge that its identification of Bah as the thief was wrong at the time that Yhap signed it. Therefore, the accusation lacked reasonably trustworthy information sufficient to allow a prudent man to warrant that the plaintiff had committed or was committing an offense.

Page 12

80.    The Freehold and Cherry Hill charges were a direct and proximate result of the reckless identification and false accusations arising from the Paramus thefts, and the criminal charges filed against the Plaintiff in that jurisdiction were without probable cause.

81.    Apple and SIS' statement to Freehold law enforcement that Mr. Bah had committed the alleged theft was made with reckless disregard for the truth and is therefore not covered by a qualified privilege.

### Apple's Failure to Produce Exculpatory Video in Boston, Elsewhere

82.    In June 2018, Plaintiff Ousmane Bah appeared in Boston Municipal Court and was represented by counsel. Mr. Bah's attorney requested the video evidence from the Boston thefts to demonstrate that Bah did not commit them. This request was relayed by the Suffolk County prosecutor to Apple.

83.    Shortly thereafter, Apple advised the prosecutor that the video evidence, which would have completely exculpated Ousmane Bah, had been deleted or destroyed.

84.    Months after these requests, in connection with Plaintiff's charges, an Apple employee forwarded to the prosecutor a video of a second thief, named Boubakar Toure, who allegedly committed shoplifting in Boston in conspiracy with the impostor, in response to a subpoena.

85.    Both SIS and Apple knew that this second thief was not the Plaintiff, and knew his name was Boubakar Toure from a prior theft in Greenwich, CT.

86.    Defendants offered no explanation as to why a video taken of a second thief at the Boston store had been preserved while the video of the impostor had been destroyed.

87.    Furthermore, at or around this time, police departments in Paramus, Millburn, and Cherry Hill, NJ, were repeatedly requesting video evidence of the alleged thefts, which both Apple and SIS had promised to provide at the time it sought criminal complaints, arrest warrants, and prosecution.

88.    Like the destroyed Boston video, each one of these New Jersey videos would have provided exculpatory evidence showing that Ousmane Bah did not commit the alleged thefts, which Apple either intentionally or recklessly allowed to be destroyed or erased.

89. However, as with the Boston video, Defendants Apple and/or SIS, whether intentionally or carelessly, also "deleted" the Rockaway theft video. Apple claims they have no written policy regarding the retention of retail store surveillance video.

90. Such deletion—amounting to spoliation of exculpatory evidence of a criminal charge—is further evidence of the Defendants' reckless disregard for the truth or falsity of the charges made against the Plaintiff. Moreover, the Defendants' selective deletion of the Boston and New Jersey videos—while preserving simultaneously recorded video of another thief—is further evidence that Defendants' pursuit of the Plaintiff was either reckless or malicious.

## An Additional Theft Charge in Trumbull, CT

91. On October 28, 2018, Apple employee Joe Carpenter called the Trumbull, CT police department and alleged that "Ousmane Bah" had stolen from Apple's store in Trumbull. Carpenter, relaying false and misleading information from SIS' Global Security Operations Center ("GSOC"), including false information provided to GSOC about events in New Jersey by Defendants Yhap and Woodruff.

92. Relying upon SIS' false identification of the thief as Ousmane Bah in Paramus, Carpenter claimed that Bah had been arrested in New Jersey and identified as a thief committing shoplifting in numerous stores in Connecticut, which had been previously been attributed to an unknown thief.

93. Carpenter's allegation was reckless, false, and misleading, and based upon SIS' erroneous and reckless identification of Ousmane Bah as the thief in Paramus, NJ.

94. Carpenter's allegation was defamatory and intended to induce prosecution of Bah in Trumbull, CT.

## The Rockaway, NJ Theft

95. On October 18, 2018, the impostor(s) committed shoplifting at an Apple store in Rockaway, NJ, detected again by review of store video by Defendant SIS employee John Woodruff, a so-called "loss prevention specialist" who provided security at the Rockaway store.

96. Apple reported the theft to SIS' "Global Security Operations Center" ("GSOC"), SIS' central database maintained at SIS' headquarters in California.

97. SIS, on behalf of Apple, maintained a database of information linking the Plaintiff's name to the impostor's thefts, including information from Yhap and Woodruff, with the expectation that it would influence prosecutions in other jurisdictions where thefts occurred, including New Jersey.

98. SIS employee John Woodruff, on behalf of Apple, recklessly advised the Rockaway, NJ, Police Department that Mr. Bah was the thief and, without probable cause, induced the officers to file charges of felony theft against the Plaintiff.

99. As with the Paramus, Millburn, and Cherry Hill thefts, Defendants Apple and/or SIS represented to the respective police departments that they possessed store video of the thefts and would provide copies of the video to the respective departments.

100. However, once again, Defendants Apple and/or SIS, whether intentionally or carelessly, deleted the Rockaway theft video. Such deletion while simultaneously preserving other video evidence for even longer periods, is further evidence of the Defendants' reckless disregard for the truth or falsity of the charges made against the Plaintiff.

### SIS 'New Jersey Loss Prevention Department's Direct Involvement in the NYPD's Investigation of NY Thefts

101. On October 22, 2018, the impostor committed another theft at an Apple store, this time in Staten Island, NY. While the store captured security imaging of the thief, the thief's identity was purportedly unknown to the Staten Island store or its personnel.

102. On October 24, 2018, the impostor struck again, stealing additional merchandise from the Staten Island store.

103. Subsequently, on November 8, 2018, NYPD Det. John Reinhold submitted a request for information to identify the New York thief by publishing a flyer describing the theft and including a captured image from the security video showing the alleged thief via a reporting service used by the NYPD called "MetrORCA."

104. On November 15, 2018, Defendant John Woodruff, using the address provided in the MetrORCA bulletin, emailed Det. Reinhold and advised him that Apple and SIS identified the Staten Island thief as Ousmane Bah, further falsely

representing that Bah "had been hitting Apple stores for quite a few months now and doesn't seem to be stopping," referring to the New Jersey and Massachusetts thefts, and naming the Plaintiff as the impostor who had committed thefts of Apple stores throughout the Northeast.

105. Defendant Woodruff's allegations were false and misleading, and based upon these repeated reckless misidentifications of the impostor as Ousmane Bah, including but not limited to the Defendant Paramus officers' reckless misidentification and criminal charges against Bah without probable cause.

106. Based in large part upon Defendant Woodruff's false information about the New Jersey thefts which, in turn, were based upon the reckless identification of the Plaintiff as the impostor in New Jersey, Detective Reinhold sought and obtained a warrant for the Plaintiff's arrest for the Staten Island thefts.

## The New York Arrest

107. On November 29, 2018, at approximately 4:00 AM, in reliance upon the false identification provided by Apple, SIS and, through SIS, the New York Police Department, and using the warrant issued without probable cause based upon the Paramus, NJ, identification of the Plaintiff, unidentified officers of the NYPD came to Mr. Bah's family home to arrest him for the New York thefts.

108. The warrant issued for Bah's arrest contained the photo of the impostor (now known to be Mamadou Barrie). As stated above, Barrie in no way physically resembles the Plaintiff, other than being Black.

109. At the time of the arrest, Mr. Bah was still being prosecuted, albeit wrongfully, for the Boston thefts, and, based upon Apple's false representation to his counsel, believed that the one piece of evidence definitively absolving him of these thefts had been destroyed by Apple. This misrepresentation further increased Mr. Bah's fear and stress.

110. Further, at the time of the arrest, Mr. Bah was aware that he had been allowed to leave Massachusetts on his own recognizance, but that occurrence of any other crime might lead to violation of the terms of his release and incarceration either in New York or Massachusetts while awaiting trial.

111. Further, at the time of the arrest, Mr. Bah was aware that the felony charges issued against him in Boston and in New York could lead to his removal from the United States, the only home he's ever known, were he to be handed over to Immigration and Customs Enforcement. Though he was not deported, the wrongful criminal charges against him resulted in Mr. Bah's citizenship

application being denied, requiring months of fraught appeal to customs officials and repeated explanations as to why his previously clean criminal record was now littered with felony thefts in several different states.

112. Mr. Bah was an honors student in high school with no criminal record prior to the events complained of and was in the United States pursuant to a valid permanent resident permit. It is likely, therefore, that without the complained-of events, his application would have been allowed.

113. After being taken to a New York City precinct, Det. Reinhold advised Mr. Bah that Apple's imaging of the New York thief did not match his appearance and released him, subsequently dropping the charges.

114. Mr. Bah was further advised by Det. Reinhold that it was likely Mr. Bah was incorrectly identified based upon a facial recognition system utilized by Apple or SIS.

115. The NYPD arrest and detainment was without probable cause and induced by the misidentification of Mr. Bah as a thief by Defendant Steven Yhap, as well as Defendants Olive and Siemon (in Paramus, NJ), Defendant SIS employee John Woodruff (through his direct communication with the NYPD concerning the Staten Island thefts), SIS, and Apple, as well as by the destruction of exculpatory evidence in New Jersey and elsewhere by Apple and SIS.

116. Upon information and belief, subsequent to Mr. Bah's arrest and release in New York, SIS and/or Apple knew that the Plaintiff had been arrested, that he was neither the Staten Island thief nor the impostor, and that the NYPD had released the Plaintiff after comparing the video imaging from the Staten Island theft to the Plaintiff being held against his will in the police station.

117. Despite irrefutable notice that the person whom they had accused of theft was not the actual thief, SIS and Apple continued to prosecute Ousmane Bah for the Paramus, NJ theft, the Boston, MA theft, the Rockaway, NJ theft, and the Cherry Hill, NJ theft. Likewise, SIS and Apple failed to retract active "BOLO" advisories linking the impostor's picture to Mr. Bah's name.

118. SIS and Apple's continued active pursuit of these charges despite actual knowledge of the misidentification along with their failure to withdraw BOLOs, was not only tortious, but also evidences their reckless disregard for the accuracy of their criminal accusations or the consequences they caused for the innocent young man they continued to defame.

**The Holyoke, MA Theft and Arrest**

119.   On December 1, 2018, two days after the NY arrests conclusively demonstrated that Bah was not the impostor committing numerous thefts at Apple stores, SIS employees apprehended the impostor as he attempted to steal merchandise from a Holyoke, MA Apple store.

120.   Despite actual notice that the impostor was not the Plaintiff, the SIS agents called the Holyoke Police and recklessly misidentified the impostor as Ousmane Bah.

121.   As stated above, this false identification occurred, in part, not only through SIS' recklessness in initially misidentifying the impostor, but through its reckless failure to correct the misidentification once on actual, incontrovertible notice of its error. At all times relevant, SIS had the means to communicate such information to its agents in the field through its Global Security Operations Center ("GSOC"), which was maintained to provide centralized and immediate information to so-called SIS "loss prevention specialists" and to law enforcement.

122.   The Holyoke Police took the heretofore unheard of step of fingerprinting the suspect, and forwarded the data to the FBI's National Criminal Identification Center ("NCIC"). The prints revealed that the suspect was not Ousmane Bah, but Mamadou Barry (or "Barrie").

123.   New York's FIS process had identified Mamadou Barry (or Barrie) as being the individual who committed the Staten Island thefts. However, this conflicting identity was disregarded by Det. Reinhold in issuing the arrest warrant for the Staten Island thefts and in causing Mr. Bah to be detained.

124.   The Holyoke Police extradited Mamadou Barry as "Ousmane Bah" to New Jersey for outstanding warrants.

125.   Barry was, in fact, at least one of the thieves involved in each of the above-described shoplifting incidents at Apple stores, and was the individual whom SIS and Apple had repeatedly, recklessly and falsely identified as Ousmane Bah.

126.   Defendants' representations that the Plaintiff was the thief in Holyoke—after the New York arrests definitively established the Plaintiff's innocence—provides further evidence that these accusations were made with reckless disregard for the truth or falsity of their accuracy, and with no regard for the continuing damage caused to the innocent Plaintiff.

127.   During this time, the prosecution of the Plaintiff for the Boston theft was not withdrawn by Defendants Apple and SIS, again demonstrating that the

allegations against the Plaintiff were reckless without regard for the continuing damage being caused to him.

## The Freehold, NJ Theft

128. On December 6, 2018, less than two weeks after conclusively learning that Mr. Bah was not the thief shoplifting from its stores, Mr. Bah received by mail notice of a warrant in the Freehold County District Court for his arrest for the Freehold thefts, based upon the false accusations made by Apple and/or its agent, SIS, to the Freehold, NJ police.

129. At the time this notice was served on Mr. Bah, Apple and/or its agent, SIS, had actual or constructive knowledge of the Paramus, NJ theft and detention, the Boston, MA theft and prosecution, and the Staten Island, NY arrest of Mr. Bah and his subsequent release and dropped charges, based upon Apple's false identification of Mr. Bah as the thief that had committed each of these criminal events.

130. Further, at the time of Bah's receipt of this notice, Apple and/or its agent SIS, had actual or constructive knowledge that Mr. Bah was innocent of each theft and that it had wrongfully charged Mr. Bah for theft in multiple states based upon their false identification.

131. At the time of Bah's receipt of this notice, Apple and its agent, SIS, also had actual or constructive knowledge that they had in their possession or control imaging evidence clearing Mr. Bah of its accusations of thefts and pending prosecutions against him in Massachusetts, Connecticut, and New Jersey.

132. However, *even with this knowledge*, both Apple and SIS continued in their prosecution of the Plaintiff in New Jersey.

133. On December 12, 2018, SIS loss prevention specialist Rakia Morgan appeared in the New Jersey State District Court in Cherry Hill, NJ to continue to press Apple's and SIS' criminal charges for thefts in Cherry Hill against Ousmane Bah, despite SIS' knowledge that the charges were false and based upon reckless misidentification.

134. When Morgan appeared in Court, however, yet another individual appeared in response to the Summons. This individual's identity was verified by photo identification as a different Ousmane Bah, a resident of Willingboro, New Jersey. He was not the Cherry Hill, NJ thief. The Court dismissed the charges against Bah.

135. That the Cherry Hill prosecution continued despite Apple and SIS having with knowledge that the thief was not Ousmane Bah and nonetheless causing criminal process to be issued against *yet another individual with the same name*, is further evidence of Apple and SIS' recklessness in both falsely accusing the Plaintiff and of continuing to prosecute him for false charges.

136. SIS employee Rakia Morgan immediately advised SIS' Global Security Operations Center ("GSOC") that the thief whom SIS had identified (in sworn warrants seeking prosecution) as Ousmane Bah was not, in fact, the Plaintiff. Copied on this notice was Defendant John Woodruff, named above, who was the so-called "loss prevention specialist" in Rockaway.

137. During this period, the prosecution of the Plaintiff for the Boston thefts and the remaining New Jersey thefts continued and were not withdrawn by either Defendant.

### Continued Prosecution of Mr. Bah in Multiple States

138. These actions are further evidence of Apple and SIS' reckless disregard for the truth or falsity of the charges against Ousmane Bah in presenting and failing to withdraw false charges in Massachusetts.

139. As alleged above, Apple and SIS had actual knowledge by report from New York as early as late November 2018 that the person that they had identified as committing shoplifting at their stores was not the Plaintiff.

140. Further, SIS and Apple were aware in mid-December 2018 that the person that they had identified as the thief was not the Plaintiff.

141. After the New York arrest, both Apple and SIS were under an affirmative duty to immediately disclose to law enforcement officials that the prosecutions against the Plaintiff were without probable cause and that the criminal cases against the Plaintiff should be dismissed.

142. However, both Apple and SIS allowed prosecutions against Bah to continue *through June 2019*, including matters in Freehold, NJ; Lawrence, NJ; Boston, MA; and other jurisdictions.

143. By January 2019, Apple and SIS were constructively aware of multiple individuals with different appearances, all of whom were described as or whose images were produced in response to charges against "Ousmane Bah," including:

Page 20

1)      the Plaintiff, Ousmane Bah, who responded to the description in the temporary learner's permit;

2)      the impostor, Mamadou Barrie, who had claimed to be "Ousmane Bah" but did not meet such description;

3)      "Ousmane Bah," a Black male who had committed shoplifting in Apple's Montreal, Canada store in 2016;

4)      the additional Black male who committed shoplifting on May 31, 2018 at the Boston Apple store, later identified as Boubakar Toure; and

5)      an Ousmane Bah residing in Willingboro, New Jersey who responded to the warrant issued for the Cherry Hill thefts.

144.    In January 2019 and without comment, in response to the September 2018 subpoena issued by Mr. Bah's counsel for the Boston charges, the prosecution produced the aforementioned security video that showed Boubakar Toure in the Boston store at the time of the Boston thefts.

145.    Although neither Apple nor SIS said anything about the inconsistency—such as warning the prosecution that they had the wrong person and the charges should be dismissed—the Boston criminal charge was thereafter *nolle prossed* based upon this video, which clearly did not depict the Plaintiff.

146.    However, SIS and Apple took no steps to reach this result. Neither SIS nor Apple ever apologized to the Plaintiff, explained or apologized for the false charge of felony theft filed by SIS as Apple's agent, or apologized for or explained its false representation that the exculpatory video had been withheld or presented as destroyed.

147.    Further, in June 2019, Defendant Steven Yhap, on behalf of SIS and Apple, appeared in court in New Jersey, intent on prosecuting Ousmane Bah for the Paramus, NJ thefts, charges supported by the Paramus police Defendants, even though by this time Bah was known to SIS and Apple with certainty not to be the Paramus thief. When confronted by Bah and counsel in New York, Yhap dismissed the Paramus complaint.

148.    Moreover, the corporate Defendants withheld this exculpatory information from the Defendant Paramus Police Department and the Court until June 2019, months after they had been sued by the plaintiff in New York and after Apple and SIS were instructed by the Court to disclose to Plaintiff's counsel in this

action all instances in which SIS had alleged that Ousmane Bah had committed shoplifting.

149. The Paramus Police Department's continued prosecution of Ousmane Bah as a thief though June 2019 despite their own independent failure to verify the impostor's identification.

### Continued Reckless Disregard and Malicious Prosecution of Plaintiff

150. This matter was initially commenced in April 2019 in the Southern District of New York, captioned *Bah v. Apple et al*, bearing the index number 1:19-cv-3539. Defendants Apple and SIS immediately conferenced this matter and sought its dismissal. After letter conferencing and an Amended Complaint, the Court scheduled this matter for an initial conference.

151. Within three days of Plaintiff filing the initial Complaint in this matter, the NYPD located and arrested the impostor, Mamadou Barrie. Both Apple and SIS were aware of this arrest and Barrie's subsequent prosecution.

152. The Court held a preliminary hearing concerning Apple and SIS' request for dismissal on June 18, 2019. Apple and SIS, through counsel, were advised that the pending false charges had imperiled the Plaintiff's pending application for permanent US citizenship. Accordingly, this Court directly ordered SIS and Apple to identify to the Court and to the Plaintiff by letter all jurisdictions in which they had alleged that Ousmane Bah had committed theft by the end of June 2019.

153. Plaintiff received SIS' counsel's letter on June 26, 2019. Although SIS had alleged that the Plaintiff had committed thefts in King of Prussia, PA, at the Menlo Park Mall in NJ, and the Mall at Short Hills, NJ, as well as Staten Island, New York, as described above, SIS omitted these three incidents entirely. *A copy of the letter is attached as Exhibit 2.*

154. Moreover, neither corporate Defendants' counsel disclosed to Plaintiff or the Court that the actual thief had been arrested in April 2019, or was being prosecuted by New York authorities for, among other allegations, impersonation of the Plaintiff.

155. Plaintiff received Apple's counsel's letter on June 27, 2019. Although Apple employees had named the Plaintiff as a thief in Greenwich, CT and Staten Island, NY, Apple's counsel listed no such jurisdictions. *A copy of the letter is attached as Exhibit 3.*

Page 22

156. The selective omissions in these letters, and the failure to disclose the actual thief's arrest and prosecution, despite the Court's direct order to disclose claims of theft, are further evidence of Apple and SIS' reckless disregard for the truth or falsity of their wrongful accusations of the Plaintiff.

157. Although on notice as early as November 2018 that their claims of the Plaintiff being a thief were false, Defendants Apple and SIS allowed prosecutions to continue in other jurisdictions as late as June 2019.

158. Defendants Apple and SIS pursued a Motion to Dismiss, supported in part by an affidavit submitted in July 2019 by Thomas Stevens, a Vice President of SIS. In the affidavit, SIS claimed that it had never informed the New York Police Department that the Plaintiff was a thief or had committed the Staten Island thefts, and had never advised Apple that the Plaintiff was the Staten Island thief.

159. However, **this affidavit was knowingly false** when submitted. As noted above, SIS employee John Woodruff specifically advised a New York Police Department detective that the Staten Island thief was "Ousmane Bah" by an email in mid-November 2018, less than a year prior to the affidavit's filing. **Stevens was also copied on an email** from Woodruff to Apple indicating that Mr. Bah was the Staten Island thief, again evidencing that Stevens knew that SIS had identified Bah to Apple.

160. This false affidavit in the New York litigation, submitted to the Court in the context of a dispositive motion, is further evidence of SIS and, through SIS as its agent, Apple's reckless disregard for the truth or falsity of allegations concerning these incidents, and therefore of the absence of qualified privilege for any of their allegations.

161. The above actions demonstrate that SIS and Apple's actions toward Bah, statements identifying Bah as a felon, and prosecution of Bah in multiple states, were not only wrongful but also were maintained in reckless disregard for the truth or falsity of the allegations.

162. The Southern District of New York, without any discovery, ruled upon Defendants Apple and SIS' Motion to Dismiss in mid-February 2020 and found at that time no evidence of a nexus between the Defendants' New Jersey business interests and events in New York, and ordered dismissal of the New Jersey counts.

163. In March 2020, this Court and the New Jersey Supreme Court issued tolling orders concerning court filings based upon the COVID epidemic, tolling filing of this matter through July 2020.

164.   Discovery newly produced by Apple and SIS at the end of June 2020 revealed evidence that Apple viewed its Staten Island store as part of its New Jersey operations and also disclosed that SIS' New Jersey loss prevention department had involved itself in the New York charges and arrests. Therefore, on July 15, 2020, Plaintiff filed a Motion to Amend his Complaint which, inter alia, sought to revive the New Jersey allegations based upon evidence of the sharing of New Jersey and New York business interests, which Plaintiff claimed showed a nexus between SIS and Apple's business interests in New Jersey and New York.

165.   However, on August 10, the Court (Castel, J.) denied the Motion to Amend as to the New Jersey allegations, finding that facially, these allegations did not change the Court's determination that the Defendants' New Jersey actions did not affect New York business interests and therefore lacked a nexus to that Court. Accordingly, Plaintiff has now filed this Action to ensure his New Jersey claims receive their day in Court.

166.   Any delay in these filings is due to the pending nature of the suit filed against the corporate Defendants in April 2019, the subsequent amendment of the Complaint in July 2020, and the newly produced evidence that creates a question of fact as to the nexus of the corporate Defendants' actions in New Jersey to New York, where the Plaintiff was ultimately arrested from his family home at 4:00 in the morning.

## COUNT I (Defamation – Apple)

167.   Apple and SIS (as Apple's agent), individually and in conspiracy together, as described above, made untrue statements, both orally and in writing, accusing the Plaintiff of committing crimes in seventeen separate instances over a period of nine months, including using information recklessly and unreliably obtained in New Jersey to accuse the Plaintiff as a thief in New York to the NYPD, which directly led to the Plaintiff's wrongful arrest and detention.

168.   These false statements were published to Apple and SIS retail and law enforcement personnel in Massachusetts, Connecticut, Pennsylvania, New Jersey, and New York, as well as to other third parties.

169.   By their own representations, Apple and SIS' accusation of Bah as a thief in each of the complained-of locations was based on the apprehension in Paramus, NJ. Thereafter, using the Paramus apprehension, both Apple and SIS referred to the impostor as Bah and called him a "known" shoplifter who committed multiple thefts in multiple jurisdictions.

170. These cumulative misidentifications built upon themselves, creating the impression to law enforcement officials that the Plaintiff was a serial offender operating throughout the northeast United States, and created a sense of urgency to promote his arrest and detainment.

171. Apple and SIS' loss prevention and investigation practices falsely identifying the Plaintiff as the individual who committed thefts in Paramus, NJ, including their:

- reckless procurement and publication of incorrect, misleading, and false charges against an innocent man;

- failure to advise law enforcement of inconsistent and exculpatory information;

- reliance upon documents which, on their face, stated that they could not be used to identify anyone;

- disregarding conflicting evidence between the physical description of Bah on the temporary learner's permit and the physical characteristics of the actual thief;

- repeated false accusations based upon patently unreliable information, to the point of swearing out warrants naming Mr. Bah as a thief when Apple and SIS had irrefutable proof that their evidence naming Bah as their shoplifter was not true;

- failing to preserve and disclose exculpatory video;

- conducting of a criminal investigation of store thefts without following established principles of investigation; and

- failure to withdraw or correct BOLO bulletins circulated by Apple and SIS

were, individually and collectively, unreasonable, reckless, and conducted without regard to the truth or falsity of claims made against Mr. Bah.

172. The false accusations that Bah was a thief were published orally and in writing to third parties and were not limited to law enforcement.

173. Such public comments were both oral and in writing, and were slander and libel *per se,* and injured the Plaintiff's reputation.

Page 25

174. Mr. Bah was significantly injured as a result of these reckless actions. He was made subject to criminal process, shackled and deprived of his freedom, publicly embarrassed, and has suffered significant psychological harm with physical manifestations, including insomnia, depression, exhaustion, and continual anxiety as to what effect these repeated false charges will have on his record and whether they will interfere with his post-college employment and career. He lives in continuing fear that additional false charges will be made against him and that he might again be apprehended without cause, perhaps even being forced to leave the country.

175. Mr. Bah has and continues to suffer from damage to his personal reputation as a result of the Defendants' false accusations.

176. Mr. Bah has lost, and will continue to lose, employment opportunities as a result of the false charges made by Apple and SIS in New Jersey, New York, and elsewhere, as a result of its reckless allegations concerning the New Jersey thefts.

177. Mr. Bah's application for permanent status and United States' Citizen was imperiled due to the aforementioned false criminal charges.

178. There is a direct nexus between the Defendants' actions in each of these false accusations and the injuries suffered as a result of the multiple defamations, including **specifically those occurring in New Jersey**.

179. As noted above, Plaintiff commenced suit on these tortious actions in New York in April 2019, within the one-year statute of limitations for defamation provided under New Jersey law. However, in February 2020, that Court dismissed the New Jersey allegations, finding that they lacked sufficient nexus to the New York arrests (although the New Jersey arrests, misidentifications, and serial thefts had led the Defendants to misidentify the Plaintiff as the thief in New York).

180. When further evidence demonstrated that Defendant SIS (contrary to the claims in the affidavit of its Vice President, Thomas Stevens) had actually used the New Jersey thefts to identify the Plaintiff in New York, Plaintiff in July 2020 sought to bring this evidence to the New York Court's attention and attempted to amend and revive the New Jersey claims in New York.

181. However, in August 2020, that Court ruled that the sought amendment was futile and refused to allow amendment, which otherwise would have related the date of filing of the New Jersey allegations to April 2019, well within the New Jersey statute of limitations for such claims.

182. Moreover, as noted above, the Defendants continued to press claims in New Jersey up to and including June 2019, within one year of the filing of the Motion to Amend, again within the New Jersey statute.

183. Defendants' false and misleading affidavit; continued pressing of claims through June of 2019; and the filing of this claim timely in New York and active pursuit of the claim thereafter, not only placed the Defendants on fair notice of the New Jersey claims, but also are ample grounds for tolling of the running of the New Jersey defamation claims' statute of limitations, making the Plaintiff's defamation claims timely filed. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3d Cir. 1988).

## COUNT II (Defamation – SIS)

184. Plaintiff repeats the above allegations and incorporates them herein by reference.

185. SIS, individually and as an agent and in concert with Apple, as alleged above, made repeated false statements accusing the Plaintiff of multiple crimes and published said statements to its own personnel, to Apple employees, and to law enforcement personnel in Massachusetts, Connecticut, Pennsylvania, New York, and New Jersey.

186. The untrue representations made orally and in writing by SIS (individually and as Apple's agent) were false and inaccurate.

187. The untrue representations were both slanderous and libelous, and injured the reputation of the Plaintiff.

188. As alleged above, these false statements were published with reckless disregard to their truth or falsity, and are not subject to privilege under the laws where each false statement was published.

189. SIS' accusations and representations that Mr. Bah had committed a crime each and collectively constituted defamation *per se* (specifically, false allegations of a criminal act).

190. As a result of the defamatory actions of SIS, individually and in joint venture with Apple, Plaintiff has suffered the injuries referred to in the above paragraphs.

191. Based upon equitable tolling, as noted above, this claim for defamation is timely filed under New Jersey law. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3d Cir. 1988).

Page 27

## COUNT III (Defamation – Steven Yhap and John Woodruff, Individually)

192. Plaintiff repeats the above allegations and incorporates them herein by reference.

193. As alleged herein, Defendants Yhap and Woodruff made false statements accusing the Plaintiff of multiple crimes and published said statements to its own personnel, to Apple employees, and to law enforcement personnel in various jurisdictions.

194. The untrue statements, made orally and in writing, were false and inaccurate.

195. The untrue statements were both slanderous and libelous, and injured the reputation of the Plaintiff.

196. As alleged above, these false statements were published with reckless disregard to their truth or falsity, and are not subject to privilege under the laws where each false statement was published.

197. Yhap and Woodruffs' statements that Mr. Bah had committed a crime each and collectively constituted defamation *per se* (specifically, false allegations of a criminal act).

198. As a result of the defamatory actions of Yhap and Woodruff, Plaintiff has suffered the injuries referred to in the above paragraphs.

199. Based upon equitable tolling, as noted above, this claim for defamation is timely filed under New Jersey law. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3d Cir. 1988).

## COUNT IV (Malicious Prosecution – Apple)

200. Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

201. Apple, individually and in concert with SIS, owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

202. Apple, through its employees and through its agent for anti-shoplifting purposes, SIS, falsely accused Plaintiff of committing multiple crimes as stated

above in New Jersey, with the intent and expectation that Plaintiff would be taken into custody, prosecuted, and punished therefor.

203. At the time of each of these accusations, Apple expected and intended that Defendant SIS act on its behalf and in furtherance of its business interests for purposes of the criminal accusations, and in all such cases, SIS acted as Apple's agent.

204. At the time that Apple and SIS, individually or collectively, accused Plaintiff of having stolen merchandise from their stores, as noted above, their accusations were with actual or constructive knowledge of their falsity and therefore lacked probable cause, as there was insufficient information to warrant a prudent person believing that the Ousmane Bah had committed or was committing an offense.

205. Apple and SIS knowingly or recklessly misrepresented the state of evidence in these prosecutions with actual or constructive notice that would tend to prove the innocence of Mr. Bah, whom they had falsely charged, and knowingly or recklessly withheld exculpatory evidence and information from the police and prosecution.

206. As a result of Apple's malicious prosecution, repeated false criminal charges, and reckless disregard to the truth or falsity of the allegations it made against him in in New Jersey, Mr. Bah has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunities, and significant stress, as well as physical sequelae from such emotional harm.

### COUNT V (Malicious Prosecution – SIS)

207. Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

208. SIS, individually, and as an agent and in concert with Apple, owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

209. SIS falsely accused Plaintiff of committing a crime in New Jersey, with the intent and expectation that Plaintiff would be taken into custody, prosecuted, and punished therefor.

210. At the time SIS accused Plaintiff of having stolen merchandise from their stores, as noted above, their accusations were with knowledge of their falsity, and

therefore lacked probable cause, as they lacked reasonably trustworthy information sufficient to warrant a prudent man to believe that the plaintiff had committed or was committing an offense.

211. Moreover, Apple and SIS, individually and in concert with one another, knowingly or recklessly misrepresented the status of evidence in these prosecutions with actual or constructive notice that it would tend to prove the innocence of Mr. Bah, whom they had falsely charged, and withheld exculpatory evidence and information from the prosecution.

212. SIS' actions constituted malicious prosecution of the Plaintiff, resulting in damage and injury to the Plaintiff.

213. As a result of SIS' malicious prosecution, repeated false criminal charges, and reckless disregard for the truth or falsity of the allegations it made against him in New Jersey, New York, and elsewhere, Mr. Bah has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunities, and significant stress, as well as physical sequelae from such emotional harm.

## COUNT VI (Malicious Prosecution – Steven Yhap and John Woodruff, Individually)

214. Plaintiff reiterates the allegations made in the above paragraphs and incorporates them herein by reference.

215. As alleged herein, Defendants Yhap and Woodruff owed a duty to the Plaintiff to refrain from accusing him of committing a crime without probable cause, under the laws of each state where it made such an accusation.

216. Defendants Yhap and Woodruff falsely accused Plaintiff of committing a crime in New Jersey, with the intent and expectation that Plaintiff would be taken into custody, prosecuted, and punished therefor.

217. When Woodruff and Yhap accused Plaintiff of shoplifting, as noted above, their accusations were with knowledge of their falsity, and therefore lacked probable cause, as they lacked reasonably trustworthy information sufficient to warrant a prudent man to believe that the plaintiff had committed or was committing an offense.

218. Moreover, Yhap and Woodruff knowingly or recklessly misrepresented the status of evidence in these prosecutions with actual or constructive notice that it

would tend to prove the innocence of Mr. Bah, whom they had falsely charged, and withheld exculpatory evidence and information from the prosecution.

219.   Yhap and Woodruff's actions constituted malicious prosecution of the Plaintiff, resulting in damage and injury to the Plaintiff.

220.   As a result of Yhap and Woodruff's malicious prosecution, repeated false criminal charges, and reckless disregard for the truth or falsity of the allegations they made against Mr. bah in New Jersey, New York, and elsewhere, the plaintiff has suffered fear of prosecution, loss of liberty, fear for his safety and personal freedom, embarrassment, damage to his reputation, humiliation, loss of employment opportunities, and significant stress, as well as physical sequelae from such emotional harm.

### COUNT VII (Intentional and/or Negligent Misrepresentation – Apple)

221.   Plaintiff reiterates the above allegations and incorporates them herein by reference.

222.   Apple, individually and in concert with SIS, owed Ousmane Bah a duty to refrain from making false or misleading representations concerning him, including false or misleading representations as to what evidence existed either linking him to alleged criminality at Apple stores or clearing him of such charges.

223.   Apple's actions, directly and in concert with its agent, SIS, as described above, were in breach of their duty to the Plaintiff.

224.   Apple's decisions not to correct such false representations were deliberately misleading, or recklessly so. As a direct and proximate result of Apple's misrepresentations, Plaintiff Ousmane Bah suffered injury, as described above.

### COUNT VIII (Intentional and/or Negligent Misrepresentation - SIS)

225.   Plaintiff reiterates the above allegations and incorporates them herein by reference.

226.   SIS, individually and in concert with Apple, owed Ousmane Bah a duty to refrain from false or misleading representations concerning him, including false or misleading representations as to what evidence existed which either linked him to alleged criminality at Apple stores or cleared him from such charges.

227.   SIS' actions, directly and in concert with its principal, Apple, as described above, were in breach of their duty to the Plaintiff.

228. SIS' representations concerning Ousmane Bah to law enforcement, prosecutors, defense counsel, and the Massachusetts District Court were not only false but either knowingly or recklessly so.

229. SIS' decisions not to correct such false representations were deliberately misleading, or recklessly so.

230. As a direct and proximate result of SIS' misrepresentations, Plaintiff Ousmane Bah suffered injury, as described above.

### COUNT IX (Intentional and/or Negligent Misrepresentation – Steven Yhap and John Woodruff, Individually)

231. Plaintiff reiterates the above allegations and incorporates them herein by reference.

232. Defendnats Yhap and Woodruff owed Ousmane Bah a duty to refrain from false or misleading representations concerning him, including from false or misleading representations as to what evidence existed which either linked him to alleged criminality at Apple stores or cleared him from such charges.

233. Yhap and Woodruff's actions, directly and in concert with its principal, Apple, as described above, were in breach of their duty to the Plaintiff.

234. Yhap and Woodruff's representations concerning Ousmane Bah to law enforcement, prosecutors, and defense counsel were not only false but either knowingly or recklessly so.

235. Yhap and Woodruff's decisions not to correct such false representations were deliberately misleading, or recklessly so.

236. As a direct and proximate result of Yhap and Woodruff's misrepresentations, Plaintiff Ousmane Bah suffered injury, as described above.

### COUNT X (Negligence – Apple)

237. Plaintiff reiterates the above allegations and incorporates them herein by reference.

238. Apple owed the Plaintiff, Ousmane Bah, as with any member of the public, a duty to conduct reasonable inquiry concerning allegations of theft, to refrain from false or misleading accusations of criminality, to refrain from making false or misleading representations to law enforcement, and to affirmatively correct false or misleading information as Apple and its agent, SIS, became actually or constructively aware of its false or misleading character.

239. Apple's conduct in Massachusetts, Connecticut, New York, and New Jersey breached such duty.

240. As a direct and proximate result of Apple's breach of said duty, Plaintiff Ousmane Bah suffered injury, as described above.

## COUNT XI (Negligence – SIS)

241. Plaintiff repeats the above allegations and incorporates them herein by reference.

242. SIS owed the Plaintiff, Ousmane Bah, as with any member of the public, a duty to conduct reasonable inquiry concerning allegations of theft, to refrain from false or misleading accusations of criminality, to refrain from making false or misleading representations to law enforcement, and to affirmatively correct false or misleading information as Apple and SIS became actually or constructively aware of its false or misleading character.

243. SIS's conduct in Massachusetts, Connecticut, New York, and New Jersey breached such duty.

244. As a direct and proximate result of SIS' breach of said duty, Plaintiff Ousmane Bah suffered injury, as described above.

## COUNT XII (Negligence – Steven Yhap and John Woodruff, Individually)

245. Plaintiff repeats the above allegations and incorporates them herein by reference.

246. Yhap and Woodruff owed the Plaintiff, Ousmane Bah, a duty to conduct reasonable inquiry concerning allegations of theft, to refrain from false or misleading accusations of criminality, to refrain from making false or misleading representations to law enforcement, and to affirmatively correct false or misleading information as Apple and SIS became actually or constructively aware of its false or misleading character.

247. Yhap and Woodruff's conduct as alleged herein breached such duty.

248. As a direct and proximate result of SIS' breach of said duty, Plaintiff Ousmane Bah suffered injury, as described above.

## COUNT XIII Deprivation of Civil Rights – 42 USC § 1983 (Paramus Police Department)

249. Plaintiff repeats the above allegations and incorporates them herein by reference.

250. Defendants Detective Paul Siemons and Lieutenant Robert Olive's improper identification of the Plaintiff as a thief in New Jersey and causing warrants for the Plaintiff's arrest and criminal charges without probable cause, as alleged above, constituted the deprivation of recognized rights under the United States Constitution without due process of law.

251. Defendants Siemons and Olive's actions in causing the unlawful prosecution of the Plaintiff were acting under color of state law and under the supervision and control of the Paramus Police Department.

252. As a direct consequence of the false arrest warrants and prosecutions in New Jersey, Plaintiff suffered false arrest and detention, with an accompanying a loss of freedom; injury to his reputation and resulting loss of employment opportunities; and, for a period of several months, a deprivation of his right to US citizenship otherwise guaranteed under federal law, which would have been approved but for the criminal charges and arrest in New Jersey and other jurisdictions.

## COUNT XIV Deprivation of Civil Rights – 42 USC § 1983 (Defendants Siemons and Olive, Individually and in their Official Capacities)

253. Plaintiff repeats the above allegations and incorporates them herein by reference.

254. At all times relevant, Defendants Detective Paul Siemons and Lieutenant Robert Olive, each of the Paramus Police Department, were acting under color of law.

255. The plaintiff's substantive and due process rights to be free of false, wrongful, and malicious arrest, imprisonment, and prosecution, were clearly established and secured to him under the Fourth and Fourteenth Amendments to the US Constitution.

256. Defendants Detective Paul Siemons and Lieutenant Robert Olive's improper identification of the Plaintiff as a thief in New Jersey and their acts and omissions in causing warrants for the Plaintiff's arrest and criminal charges without probable cause, as alleged above, constituted the deprivation of recognized rights under the United States Constitution without due process of law.

257. Defendants Siemons and Olive's actions in causing the unlawful prosecution of the Plaintiff were under color of state law.

258. As a direct consequence of the false arrest warrants and prosecutions in New Jersey, Plaintiff suffered false arrest and detention, with an accompanying a loss of freedom; injury to his reputation and resulting loss of employment opportunities; and, for a period of several months, a deprivation of his right to US citizenship otherwise guaranteed under federal law, which would have been approved but for the criminal charges and arrest in New Jersey and other jurisdictions.

**WHEREFORE, Plaintiff demands that this Court:**

(1) Enter judgment against the Defendants Apple and SIS, jointly and severally, in an amount which it finds just and equitable for the damages caused by such Defendants' tortious conduct suffered by Plaintiff **in New Jersey**;

(2) Enter judgment against Defendants Siemons and Olive for damages caused by such Defendants' breach of Plaintiff's Constitutional rights **in New Jersey**, together with attorney's fees, pursuant to 42 U.S.C. § 1983;

(3) Order the Defendants Apple and SIS to refrain from further accusations of criminality against the Plaintiff;

(4) Order Defendants Apple and SIS in equity to take such affirmative actions as necessary to expunge their false allegations against the Plaintiff wherever they may appear either in print or electronically, including but not limited to retractions of BOLOs and SIS GSOC records, and to clear his name in any contexts where it is associated with the Defendants' allegations of criminality or criminal behavior;

(5) Order the Defendants Apple and SIS, in equity, to publicly apologize to the Plaintiff for their tortious claims of criminality, and to publish such apology both in print and electronically in the jurisdictions where the claims were made, as well as retract, publicly, all such allegations of criminality wherever they were made;

(6) Order that the Defendants Apple and SIS provide the means for an ongoing right of reply to contradict the false and defamatory representations concerning the Plaintiff and his alleged criminality, wherever they may appear;

(7) Order that Defendants Apple and SIS, in equity, provide a monitoring service on an ongoing basis for the protection of Plaintiff's reputation, including but not limited to proactive corrections of any false allegations of criminality;

(8) Together with such other relief which this Court finds just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all allegations so triable.

Dated: October 27, 2020                                        Respectfully submitted,

Subhan Tariq, Esq.                               Daniel Malis, Esq., *Pro Hac Vice*
Attorney I.D.# ST9597                          BBO # 315770
The Tariq Law Firm, PLLC                    MALIS|LAW
**Attorney for Plaintiff**                         **Attorney for Plaintiff**
34-18 Northern Blvd – Suite 2-25          30 2nd Street
Long Island City, NY 11101                   Cambridge, MA 02141
Telephone: (718) 674-1245                    (617) 491-1099
Facsimile: (516) 453-0490                     (617) 491-1022
Email: subhan@tariqlaw.com              daniel.malis@malislaw.com