**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| |
|---|
| OUSMANE BAH, |
|                          Plaintiff, |
|            -against- |
| |
| APPLE INC., |
| SECURITY INDUSTRY SPECIALISTS, INC., |
| STEVEN YHAP, Individually and as an |
| Employee of Security Industry Specialists, Inc., |
| JOHN WOODRUFF, Individually and as an |
| Employee of Security Industry Specialists, Inc., |
| DETECTIVE PAUL SIEMON, Individually and |
| as an Officer of the Paramus Police Department, |
| LIEUTENANT ROBERT OLIVE, Individually |
| and as an Officer of the Paramus Police |
| Department, and |
| THE BOROUGH OF PARAMUS, |
| |
|                          Defendants. |

Case No. 2:20-cv-15018-
MCA-MAH

**MEMORANDUM OF LAW**

**Return Date: July 19, 2021**

**DEFENDANTS', SECURITY INDUSTRY SPECIALISTS, STEVEN YHAP**
**and JOHN WOODRUFF, MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR RULE 11(c) SANCTIONS**

Dated:        June 14, 2021

_David Metzger_

David L. Metzger, Esq.
LEWIS JOHS AVALLONE AVILES, LLP
Attorneys for Defendants
SECURITY INDUSTRY SPECIALISTS,
JOHN WOODRUFF, STEVEN YHAP
61 Broadway, 20th Floor
New York, NY 10006
212.233.7195
dlmetzger@lewisjohs.com

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................1

PROCEDURAL HISTORY.............................................................................4

ARGUMENT ...................................................................................................8

    I.     LEGAL ARGUMENT ...........................................................................8

          a.     *Rule 11 Standard for the Imposition of Sanctions* ....................8

          b.     *Defamation and Malicious Prosecution Elements in New Jersey* ................................................................................ 11

    II.    KNOWLINGLY FALSE "FACTS" ................................................... 12

          *a.*    *The "Lost" Temporary Leaner's Permit* ............................... 12

          *b.*    *The Montreal Theft and Detention* .......................................... 15

          *c.*    *"Actual Notice" of the misidentification after the New York arrest* ....................................................................................... 17

          *d.*    *No "Exculpatory" evidence was withheld* ............................. 19

          *e.*    *The Entire Narrative of the Complaint is False* ..................... 20

RELIEF SOUGHT ........................................................................................24

CONCLUSION ..............................................................................................26

# <u>TABLE OF AUTHORITIES</u>

## <u>STATUTES</u>

### <u>*Federal*</u>

F.R.C.P. Rule 12(b).................................................................... 4, 5, 17, 18

F.R.C. Rule 12(b)(6) ...............................................................2, 6, 7, 24, 25

F.R.C.P. Rule 11 ......................................................................8, 9, 10, 24, 25

F.R.C.P. Rule 11(b)...................................................................................9

F.R.C.P. Rule 11(b)(1)............................................................................10

F.R.C.P. Rule 11(b)(3) .........................................................................3, 10

F.R.C.P. Rule 11(c)................................................................................26

F.R.C.P. Rule 11(c)(4) ...........................................................................24

## <u>CASES</u>

### <u>*Federal Cases*</u>

*Ciemniecki v. Parker McCay, P.A.* 2010 WL 2326209 *1  (D.N.J. 2010)..............11

*Cohen v. Kurtzman,* 45 F. Supp. 2d 423 (D.N.J. 1999) ..........................................10

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990) ........................................24

*Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277 (3d Cir. 1991) ..........9

*Gaiardo v. Ethyl Corp.,* 835 F.2d 479 (3d Cir. 1987)  ............................................10

*Marenbach v. City of Margate,* 942 F. Supp. 2d 488 (D.N.J. 2013) ......................25

*Martin v. Brown,* 63 F.3d 1252 (3d Cir. 1995). ........................................................9

*Napier v. Thirty or More Unidentified Fed. Agents,* 855 F.2d 1080
(3d Cir. 1988) ................................................................................10

*Red Hawk Fire & Security v. Siemen's Industry Inc.,* 449 F. Supp.3d 449
(D.N.J. 2020) .................................................................................11

*Watson v. City of Salem,* 934 F. Supp. 643 (D.N.J. 1995) .................................9, 24

*White v. Camden City,* 251 F. Supp. 2d 1242 (D.N.J. 2003)....................................9

*White v. Camden City,* 90 Fed. Appx. 437 (3d Cir. 2004)........................................9

## **<u>State Cases</u>**

*LoBiondo v. Schwartz,* 199 N.J. 62 (S.Ct. 2009)  ....................................................12

## PRELIMINARY STATEMENT

This matter involves multiple shoplifting incidents in 2018 from Apple retail stores in the Northeast, including multiple stores in northern New Jersey, committed by an individual, Mamadou Barrie, who intentionally misidentified himself as the plaintiff, Ousmane Bah ("Bah"). The defendant, Security Industry Specialists ("SIS") provides loss prevention services at many (but not all) of the subject Apple stores located in New Jersey, Massachusetts and Connecticut. The defendants, John Woodruff ("Woodruff") and Steven Yhap ("Yhap") are Loss Prevention Specialists ("LPs") employed by SIS who are assigned to several of the subject Apple stores in New Jersey.  The gravamen of the allegations against these defendants is that SIS's initial identification and naming of Mamadou Barrie as Ousmane Bah was based on Mr. Barrie's presentation of, and SIS and defendant Yhap's reliance upon, the "real" Bah's stolen/lost New York learner's permit during a shoplifting apprehension on May 24, 2018 at the Paramus, NJ store. The shoplifter was surrendered to the Paramus Police Department that same day. It is alleged that based on that [mis]identification, SIS and/or its LPs, when viewing store surveillance upon learning of thefts from other stores, connected Bah to other thefts which occurred both prior to and after that May 24, 2018 shoplifting apprehension. For each of those thefts, SIS only ever identified the one "impostor", Mamadou Barrie, as Ousmane Bah.

Although the original Complaint (ECF Doc. 1) was only filed in this jurisdiction on October 27, 2020, this matter has been extensively litigated since April 22, 2019, when a complaint, seeking a vulgar one billion dollars in damages, was initially filed in the U.S. District Court for the Southern District of New York (the "New York action"). As of the filing of this application, there are fully briefed motions on behalf of Apple, Inc., SIS and Woodruff[1] to dismiss, pursuant to Rule 12(b)(6), the Third Amended Complaint ("TAC") in that New York action. That TAC, limited to New York claims of defamation and malicious prosecution, which is related to a November, 2018 New York arrest for an October, 2018 theft by the "impostor" from a Staten Island store, was filed after the parties' exchange of voluminous document discovery.

Although the New York claims are now limited to the New York theft(s), the scope of discovery in the New York action was ordered to encompass the New Jersey thefts, as well as the thefts in other states. As such, to date, SIS has produced 660 Bates stamped documents, Apple has produced 550 Bates stamped documents and the plaintiff has produced 1517 Bates stamped documents, all productions having been made in advance of the filing of the New Jersey Amended Complaint. These cumulative productions include SIS Incident Reports and SIS "Be on the Lookouts" ("BOLOs") for the respective thefts, which contain

---

[1] Yhap is not individually named in the New York action.

itemization of merchandise stolen, narratives of the loss and, of relevance, stills of the video surveillance capturing images of the shoplifter(s). The document discovery also included, but is not limited to, internal e-mails and communications between the parties and law enforcement, documents received in response to subpoenas to law enforcement in the various jurisdictions, and phone messaging between the plaintiff, Bah, and the "impostor", Mamadou Barrie, who was revealed to be his friend.

As will be explored below, the Plaintiff in this New Jersey action alleges four Counts against the defendants, SIS, Yhap and Woodruff: Defamation, Malicious Prosecution, Intentional "and/or" Negligent Misrepresentation and Negligence. In an effort to support those claims, the Amended Complaint contains a litany of highly inflammatory facts and contentions that, based on the document discovery in the New York action, are not simply known to lack evidentiary support, but are known to contradict evidence that establishes that the allegations are baseless. The plaintiff has therefore filed this Amended Complaint in violation of F.R.C.P. Rule 11(b)(3) to such a degree that the imposition of sanctions is warranted.

Equally egregious, as will be detailed below, the plaintiff continues to seek relief against SIS, its employees and Apple related to the misidentification of him as the "impostor"/shoplifter, Mamadou Barrie, when document discovery has

revealed that Mr. Barrie, against whom the plaintiff does not seek any relief, is not a stranger to the plaintiff; they have been friends for years. Electronic exchanges reveal that the latter was well aware of the former's possession of his identification and his ongoing misdeeds claiming to be Ousmane Bah, something the plaintiff affirmatively chose not to reveal to SIS, its staff, or any of the authorities, including the NYPD Detective or, in the instant suit, the named Paramus PD defendants.

## PROCEDURAL HISTORY

The Plaintiff, Ousmane Bah, filed the Initial Complaint in New York on April 22, 2019 (SDNY ECF Doc. 1) which included the following claims against both SIS and Apple: Negligence, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Defamation, Slander, Libel and Fraudulent Concealment.

After pre-Rule 12(b) motion letter briefs, the Plaintiff was afforded the opportunity to file an Amended Complaint. The First Amended Complaint was filed on June 11, 2019 (SDNY ECF Doc. 23) and contained the following claims against SIS and Apple: Defamation, Malicious Prosecution, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, as well as a claim under the Massachusetts Civil Rights Law. The Negligence, Slander, Libel and Fraudulent Concealment claims contained in the original Complaint were

withdrawn. However, the First Amended Complaint sought relief on the remaining and new causes of action for claims related to the New York incident as well as the incidents in Connecticut, New Jersey and Massachusetts.

The defendants were granted leave to file Rule 12(b) motions to dismiss the First Amended Complaint on both jurisdictional and failure to state a claim grounds. Following those motions, the Court issued its Order and Opinion of February 10, 2020 (SDNY ECF Doc. 49). Based on that decision, this Court maintained jurisdiction over SIS and Apple as parties but ruled that it did not maintain personal jurisdiction over any claims beyond those related to the New York incident. All claims pertaining to the out-of [NY]-state incidents were dismissed. Then, as to the New York incident and arrest, the Court permitted only the Defamation and Malicious Prosecution claims to proceed and dismissed all other causes of action. In permitting both those claims to continue, Judge Castel opined that the Plaintiff had adequately plead a theory of "malice". But in doing so, the Court's exclusive ground was accepting as true the plead allegations that more than one person had been identified as the plaintiff, arguable showing a "high degree of awareness" of the falsity of the statements.

Although the suit was now limited to the New York Defamation and Malicious Prosecution Claims, the Court did not limit the scope of discovery to the New York incident. The Court directed at the Case Management Conference and in

the resulting Case Management Order ("CMO") of March 19, 2020 (SDNY ECF Doc. 61) that "discovery is limited to incidents purportedly relating to Ousmane Bah or persons impersonating Ousmane Bah".

In compliance with the CMO, SIS [and Apple] exchanged hundreds of pages of Bates stamped documents within the above parameter including, but not limited to, SIS Incident Reports and attached images, SIS "Be on the Lookouts" or "BOLOs", and internal and external e-mail communications.

After the exchange of document discovery, and with leave given (SDNY ECF Doc. 79), on August 27, 2020 the plaintiff filed a Second Amended Complaint ("SAC")(SDNY ECF Doc. 85). The claims against SIS and Apple remained the same[2] but new parties were added including SIS Loss Prevention ("LP") Specialist John Woodruff (the LP who had the direct contact with the NYPD), The City of New York, The New York Police Department ("NYPD"), NYPD Detective John Reinhold and John Does 1-3 representing unidentified NYPD officers (collectively referred to herein as the "City Defendants"). The following claims were asserted against defendants SIS and John Woodruff in New York: Defamation (SIS); Defamation (John Woodruff); Malicious Prosecution (SIS). On behalf of SIS and Woodruff, a Rule 12(b)(6) motion to dismiss that SAC was filed and fully briefed. The primary argument, and relevant to this matter as

---

[2] The Plaintiff had sought leave to renew against SIS the abandoned Negligence Claim, but this was denied (ECF Doc. 79).

well, is that the SAC no longer pleads that more than one individual was ever misidentified as Ousmane Bah as it relates to the subject thefts. The Plaintiff specifically plead in the New York SAC that the same individual, the "impostor", Mamadou Barrie, committed the Boston, Connecticut and New Jersey thefts (SDNY ECF Doc. 85 ¶45) as well as the New York thefts (SDNY ECF Doc. 85 ¶¶100,101).

The Plaintiff filed a Third Amended Complaint ("TAC") in New York, adding the names of the "John Doe" NYPD officers, but otherwise with the facts plead and allegations and claims against SIS and Woodruff unchanged (SDNY ECF Doc. 130). As such, Judge Castel permitted the previously filed and briefed [and pending] motion on behalf of SIS and Woodruff to be applied to the TAC upon filing of letter requesting such application (SDNY ECF Doc.140).

On October 27, 2020 the Plaintiff commenced the instant action in the District Court for New Jersey against Apple, Inc. SIS, Steven Yhap, John Woodruff, the Paramus Police Department, Paramus PD Detective Paul Simeon and Paramus PD Lieutenant Robert Olive (D.N.J. ECF 1). A motion to dismiss pursuant to Rule 12(b)(6) was timely filed on January 12, 2021, as the time in which to answer/move on behalf of these defendants was extended to January 12, 2021 (Clerk's Text Order to D.N.J. ECF 16). Then, after the motion was fully briefed, the plaintiff sought leave to file a First Amended Complaint ("FAC")

7

replacing the defendant, Paramus Police Department, with the Borough of Paramus and to add new claims against that defendant (ECF Doc. 40). The FAC did not change the plead facts or allegations and claims against defendants, Apple, SIS, Woodruff or Yhap. This Court granted the application (ECF Doc 55) and permitted the filing of the FAC, which was filed on May 24, 2021 (ECF Doc. 57) and directed that any renewed motions to dismiss be filed by June 14, 2021.

As explored at the end of this brief, the Defendants, SIS, Woodruff and Yhap previously filed a motion seeking sanctions pursuant to Rule 11 directed to the original Complaint. The motion is now being re-submitted to the First Amended Complaint.

## **ARGUMENT**

### **I.  LEGAL ARGUMENT**

#### *a. Rule 11 Standard for the Imposition of Sanctions*

Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable

> opportunity for further investigation or discovery;
>
> . . . .
>
> (c) Sanctions.
>
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that the rule or is responsible for the violation.

Fed. R. Civ. P. 11

Rule 11 is "aimed at curbing abuses of the judicial system." *White v. Camden City*, 251 F. Supp. 2d 1242, 1248 (D.N.J. 2003) (citation omitted), *aff'd*, 90 Fed. Appx. 437 (3d Cir. 2004). "Sanctions are warranted when a reasonable inquiry would have disclosed that a claim or motion is patently unmeritorious or frivolous." *Id.* (citation omitted). The Third Circuit instructs that "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir.1991)(citations omitted); *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). The court must examine the objective knowledge of the attorney at the time the challenged paper was signed to determine whether the claim was well grounded in both law **and fact**. *Watson v. City of Salem*, 934 F.Supp. 643, 662 (D.N.J. 1995)(citations omitted)(emphasis added). One of the factors to be considered is whether a Plaintiff or Plaintiff's counsel is in a position to know or acquire the relevant factual details. *Watson, supra* at 663.

Rule 11 requires attorneys and their clients to "stop, think, investigate, and

research" before filing papers with the court. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). Indeed, "'discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action.'" *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 437 (D.N.J. 1999). Put simply, "Rule 11 therefore is intended to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1090–91 (3d Cir. 1988) (citation omitted).

Applying the legal standards above, this is case for which sanctions are warranted under Rule 11(b)(1) and (3). Although the Amended Complaint has fatal pleading deficiencies not addressed in this particular application, and to be addressed in a separate motion, it is clear that knowingly incorrect "facts" have been asserted in a blatant effort to bolster the otherwise baseless defamation and malicious prosecution claims[3] and specifically in the effort to plead or establish "malice" or "bad faith".

---

[3] The remaining two claims against these defendant, Negligent/Intentional Misrepresentation and Negligence are based on the same theories and facts as the Defamation and Malicious Prosecution Claims.

b. *Defamation and Malicious Prosecution Elements in New Jersey*

To state a claim for defamation under New Jersey law, the plaintiff must allege: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. *Red Hawk Fire & Security v. Siemen's Industry Inc*., 449 F.Supp.3d 449, 467 (D.N.J. 2020). "[A] communication to a law enforcement officer is generally held to be qualifiedly privileged if it is made in good faith for the purpose of helping to bring a criminal to justice." The privilege is abused where "(1) the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published. A qualified privilege ... is overcome on a showing of actual malice.". *Ciemniecki v. Parker McCay, P.A*., 2010 WL 2326209 *1,*8 (D.N.J. 2010)(citations omitted).

Malicious prosecution provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless. To state a claim in New Jersey for malicious prosecution the plaintiff is required to establish four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute;

and (4) the action was terminated favorably to the plaintiff. *LoBiondo v. Schwartz*, 199 N.J. 62, 90 (S.Ct. 2009).

Simply reporting the crimes by the known thief to law enforcement would not establish a claim under either tort. Therefore, the Complaint, in an effort to plead "malice", presents the following unsupported facts.

## II. KNOWLINGLY FALSE "FACTS"

### a. *The "Lost" Temporary Leaner's Permit*

Perhaps the most egregious of the false statements contained within the Complaint relates to the contention that SIS, and specifically LP Steven Yhap, relied upon the plaintiff's "lost" temporary learner's permit in identifying the shoplifter as Ousmane Bah during the apprehension for the May 24, 2018 shoplifting incident at the Paramus, NJ store. This was the first apprehension of the shoplifter by SIS. It is alleged that the impostor was carrying the plaintiff's learner's permit (¶22) and that the physical description listed on that permit was inconsistent with the individual who was detained and then arrested (¶¶23,24), something that SIS allegedly either failed to appreciate or discounted altogether. This permit is referred to as the "knowingly unreliable evidence".

Relying upon that alleged predicate fact as the lynchpin, the plaintiff repeatedly attempts to plead his claims against SIS, Yhap and Woodruff. As examples, the Complaint asserts as follows:

-The plaintiff alleges that the defendant's investigative practices – especially relying on unverified paper identification that expressly stated could not be used for identification purposes-were inadequate and provided no reasonable basis to accuse the plaintiff of crimes. As such, plaintiff contends that defendants made false allegations against him with reckless disregard for their truth or falsity (unnumbered introductory second paragraph).

-Although Defendant Yhap knew that the impostor's appearance did not match [the permit] he failed to advise the Paramus PD of this inconsistency (¶28);

-This failure…is evidence of defendant Yhap and SIS's reckless indifference….(¶29);

However, plaintiff knows this to be untrue. The plaintiff drafted this Complaint in possession of the SIS Incident Report for the May 24, 2018 Paramus, NJ theft, exchanged on June 15, 2020, Bates stamped SIS #00008-00016 and attached hereto **Exhibit "A"**.[4] The report and its attachments were prepared by Defendant, LP Steven Yhap, whose Declaration attached as **Exhibit "B"** authenticates the document and attests that the entries therein are true and accurate[5]. As is evident, the Incident Report contains many pre-printed boxes in which to input specific information, as well as a space for a narrative. That Incident Report documents that the apprehended shoplifter did not present an

---

[4] All attached incident reports, marked as Confidential by SIS in its Document Production in the SDNY action, are redacted where appropriate so as to not disclose its methods of surveilling and observing shoplifters (a separate issue from naming the shoplifter).

[5] This Declaration was also in plaintiff's possession prior to the filing of the Complaint, as it was included as an exhibit to SIS's motion to dismiss the New York SAC filed on October 13, 2020 (SDNY ECF Doc.110).

identification or driver's license. Specifically, under the boxes for "Drivers License

#" and "Other ID's" Mr. Yhap entered "NA – Not applicable". Under "Additional

Items in Possession", Mr. Yhap only indicated "car keys". Then in the narrative,

Mr. Yhap specifically states "Ousmane Bah was searched for weapons, but did not

have a DL [driver's license], so his information was obtained verbally and verified

at PD". Further, photographs of the merchandise and possessions found on him

were attached to the incident report. No learner's permit is included.

These are not merely misstatement of fact but are wrongly re-plead and

applied throughout the Complaint, including within the verbiage in the specific

counts, in an effort to support the frivolous claims and to contend that all

subsequent reports of the thief as Bah were reckless. As examples:

-…The chain reaction began in Paramus, NJ, with defendant Steven Yhap, an employee of SIS…(p.2, second paragraph under "Statement of the Case").

-At that time [of the September 18, 2018 Cherry Hill, NJ theft] Morgan, on behalf of SIS and Apple, relying on the false identification in Paramus NJ, falsely advised the Cherry Hill Police Department that the individual who committed the Cherry Hill theft was the plaintiff, Ousmane Bah (¶73).

-Without probable cause, and based on knowingly unreliable evidence, SIS and its employees, including but not limited to Defendants Steven Yhap and John Woodruff, began linking prior thefts in the region committed by the impostor to the plaintiff (¶41).

-…SIS and Apple used the learner's permit without a photograph, but with a physical description that obviously did not match, to

claim a positive identification (¶76)(with respect to the September 18, 2018 Cherry Hill, NJ theft).

-By their own representations, Apple and SIS' accusation of Bah as a thief in each of the complained-of locations was based on the apprehension in Paramus, NJ. Thereafter, using the Paramus apprehension, both Apple and SIS referred to the impostor as Bah and called him a "known" shoplifter who committed multiple crimes in multiple jurisdictions". (¶172)(Count I).

-Apple and SIS' loss prevention and investigation practices falsely identifying the plaintiff as the individual who committed thefts in Paramus, NJ, including their…reliance upon documents which, on their face, stated that they could not be used to identify anyone…disregarding conflicting evidence between the physical description of Bah on the temporary learner's permit and the physical characteristics of the actual thief…(¶174)(Count I).

b. *The Montreal Theft and Detention*

The plaintiff correctly pleads that on April 16, 2016 SIS apprehended and surrendered to Montreal police a shoplifter who was named Ousmane Bah. The Incident Report with the photograph of that suspect was duly exchanged (SIS Bates# 00002-00006)(**Exhibit "C"**). It is not plead, nor is there any debate, that this person is someone other than the plaintiff and is someone other than the "impostor", Mamadou Barrie. Referring again to the Paramus Incident Report prepared by defendant Yhap, which was the first instance in which the name Ousmane Bah was connected to the "impostor", it documents that the name was run in the SIS global database system ("GSOC"), the "hit" from Quebec was came back and, most significantly, it was immediately noted by the LP that "it was a different person, same name though". (**Exhibit "A"**). In drafting the Complaint

therefore, the plaintiff was well aware that, other than sharing the same name, SIS never connected this Montreal thief to any of the thefts that form the basis of the claims.

However, the Complaint then intentionally oversteps and is replete with false allegations affirmatively suggesting that SIS in fact connected the Montreal thief to the May 24, 2018 Paramus theft, failed to appreciate the inconsistencies between the two shoplifters' appearances, and thus knowingly identified two persons as the plaintiff. For example:

-Despite the inconsistencies between the Montreal and Paramus identification…Defendant Yhap, on behalf of his employer SIS and Defendant Apple, stated that the impostor was Plaintiff Ousmane Bah to Paramus, NJ police officers (¶27).

-At the time the Boston thefts occurred, as noted above, both Apple and SIS knew or were constructively aware that its identification of the thief as Bah was wrong, and that they had by this time identified at least two, and possibly more, different persons as Bah. (¶50).

-At this time, Defendants SIS and Apple were actually or constructively aware that at least two different shoplifters had claimed to be Ousmane Bah…(¶76)

-By January, 2019, Apple and SIS were constructively aware of multiple individuals with different appearances, all of whom were described as or whose images were produced in response to charges against "Ousmane Bah" including:…a Black male who had committed shoplifting in Apple's Montreal Canada store in 2016 (1st ¶ numbered 144).

c.  *"Actual Notice" of the misidentification after the New York arrest*

In yet a further attempt to plead the claims, the plaintiff contends, with an insufficient caveat of "upon information and belief", that after the plaintiff was arrested in New York for the Staten Island theft, a theft at a store for which SIS did not provide loss prevention services[6], SIS knew that the plaintiff had been arrested, knew that he was not the Staten Island thief nor the impostor, and knew that the NYPD had released the Plaintiff after comparing the video imaging from the Staten Island theft to the Plaintiff being held against his will at the police station (¶117).

Again, using this purported fact of "actual notice" of the misidentification, the Complaint attempts to plead the claims. For example:

-Despite irrefutable notice that the person whom they had accused of theft was not the actual thief, SIS and Apple continued to prosecute Ousmane Bah for the Paramus, NJ theft, the Boston, MA theft, the Rockaway, NJ theft and the Cherry Hill, NJ theft (¶118).

-[Related to the December 1, 2018 Holyoke, MA theft] Despite actual notice that the impostor was not the plaintiff, the SIS agents called the Holyoke Police and recklessly misidentified the impostor as Ousmane Bah (¶121).

-[Related to the December 1, 2018 Holyoke, MA theft] Defendants' representations that the Plaintiff was the thief in Holyoke – after the New York arrest[s] definitively established the Plaintiff's innocence-provides further evidence that these accusations were made with reckless disregard for the truth or falsity of their accuracy…(¶127).

---

[6] SIS LP Woodruff responded to a MetrORCA bulletin received from the NYPD detective with an image of Mamadou Barrie requesting assistance in identifying the individual.

17

-After the New York arrest, both Apple and SIS were under an affirmative duty to immediately disclose to law enforcement officials that the prosecutions against the Plaintiff were without probable cause…(¶142).

The plaintiff subpoenaed, and at the time of drafting of the Complaint was in possession of, a voluminous number of documents from the NYPD related to this arrest. None of those documents revealed any notification to SIS, which again does not provide loss prevention to the Staten Island store, of the arrest of the plaintiff or the release of the plaintiff immediately afterward. Plaintiff does however possess the email exchange between the NYPD Detective John Reinhold and SIS LP John Woodruff (SIS Bates #00323-00326, produced on June 15, 2020)(**Exhibit "D"**) that documents that not until June 12, 2019, after the initial Complaint was filed in the New York action, was SIS even made aware by the NYPD that an arrest had been made (of Ousmane Bah), let alone that Bah was released once [the NYPD] confirmed his identity.[7]

---

[7] Plaintiff's counsel references in the Complaint the affidavit submitted in support of SIS's jurisdictional argument in the first Rule 12(b) motion in New York. The SIS Vice President, based on his accurate knowledge that SIS does not provide loss prevention services to Apple stores in New York City, and based on the fact that, in turn, no incident reports or BOLOs were generated or located related to the Staten Island theft, executed same in good faith. The ESI discovery however uncovered an email, duly and timely disclosed, between the now direct New York defendants, SIS LP officer John Woodruff and NYPD Det. John Reinhold regarding the shoplifter. The Court denied the initial motion based on the jurisdictional defense, with leave to renew which, of course, SIS has not done.

### d. *No "Exculpatory" Evidence was Withheld*

SIS does not own or maintain the client's (Apple) video surveillance from the respective stores. Nevertheless, the allegations concerning the purported failure to preserve video which would have "exonerated" the plaintiff (¶56) is also knowingly baseless. Whether or not store videos were preserved, plaintiff is aware from the exchange of each Incident Report that still images from the respective videos for each referenced theft are attached to the respective reports and each show the same "impostor", Mamadou Barrie, present in the stores. That more than one "*thief*" for a particular shoplifting incident may have been captured on surveillance, as the plaintiff was known to have at times worked with an accomplice, Boubakar Toure (¶144)(whom the plaintiff also knows), does not equate to more than one "*impostor*" (Mamadou Barrie) ever having been identified as Ousmane Bah by the defendants (See Exhibit "E" below).[8] Each instance in the Complaint in which the plaintiff overtly or tacitly asserts that multiple individuals, with different appearances, were identified as the shoplifter (i.e. ¶143) is knowingly untrue.

---

[8] The Incident Reports for each other plead theft in the Complaint for which SIS provided loss prevention services are attached herein collectively as **Exhibit "E"**: Short Hills, NJ SIS Bates #00029-00035; Boston, MA – SIS Bates #00115-00118; Rockaway, NJ – SIS Bates #00203-00211; Cherry Hill, NJ – SIS -Bates #00242-00249; Trumbull, CT  - SIS Bates #00212-00216; Freehold, NJ – SIS Bates #00258-00267; Holyoke, MA – SIS Bates #00519-00526.

Indeed, the Plaintiff acknowledges and specifically plead in the New York SAC that the same individual, the "impostor", Mamadou Barrie, committed the Boston, Connecticut and New Jersey thefts (SDNY ECF Doc. 85 ¶45) as well as the New York thefts (SDNY ECF Doc.85 ¶¶100,101). In this action as well, the plaintiff acknowledges that Barrie was the person whom SIS and Apple had "repeatedly" identified as Plaintiff (¶126).

   e. *The Entire Narrative of the Complaint is False*

All of the above is with the backdrop of the fact that the plaintiff, Ousmane Bah, was friends with the impostor "Mamadou Barrie", knew he possessed his learner's permit and knew he was misidentifying himself as Ousmane Bah. However, Bah repeated withheld this information from the authorities, Apple and SIS. That disclosure would have exonerated him immediately and prevented any further thefts and incorrect accusations. The Complaint instead simply pleads that his learner's permit "went missing" (¶13) and reads as if all misidentifications and the arrest and/or court appearances occurred outside of his control.

Annexed hereto as **Exhibit "F"** are the Facebook Messenger communications (plaintiff Bates stamped # 001336-001344) between the plaintiff (Prince Alpha) and Mamadou Barrie (Prince Barry). Of particular note, on April 14, 2018 the two had the following exchange regarding Mamadou Barrie's possession and use of the leaner's permit:

20

> Prince Alpha [Bah]: I need my sh-t
> Prince Barry [Barrie]: I ain't gonna lie stop talking like that
> . . .
> Prince Alpha [Bah]: And I know you've been seeing me call u
> Prince Barry [Barrie]: you don't even f-ck know what I went through this week
> Prince Barry [Barrie]: so just stop it
> Prince Barry [Barrie]: Ima give you your sh-t tonight period

On September 12, 2018, the two discussed Barrie's impersonation of Plaintiff:

> Prince Alpha [Bah]: You the snake and rat of the year
> Prince Alpha [Bah]: Shit going bite you back in you're butt
> . . .
> Prince Alpha [Bah]: Karma a bitch
> . . .
> Prince Barry [Barrie]: What I did was messed up you have all right do be mad bro 100[%] don't get me wrong 100[%]
> . . .
> Prince Alpha [Bah]: You still using my sh-t
> Prince Alpha [Bah]: . . . leave me outa you're miserable life man
> . . .
> Prince Alpha [Bah]: I'm warning you
> Prince Alpha [Bah]: This is the last time
> . . .
> Prince Barry [Barrie]: I already told you wassup I was wrong for what I did 100[%] and I been stopped using your sh-t I got my own sh-t and it's whatever you do what you gotta do 100[%]
> Prince Alpha [Bah]: You a liar bruh I ain't going get into details
> Prince Alpha [Bah]: You'll see what's coming for you.

Plaintiff also produced communications in the New York Action that make evident his knowledge or concern that Barrie had impersonated him in connection with the Boston Theft on May 31, 2018. Specifically, on June 9, 2018, Plaintiff wrote to his brother, as follows:

Plaintiff:     Bro can you track this n**** Alieu [Barrie] down for me.  He framed me.  He went and stole 1200 worth of Apple Corp in Boston [a]nd put it under my name smh.  I have court for some bullshit.

Plaintiff's Brother:   I am not tracking no one.  I been telling you over and over do not get involved in sh-t like that but you don't listen.  Last time I asked you why you went to NJ but u brought b.s. ass excuses.  Koto been talking to you every day and u did not listen to him.  So now you will have to deal with the consequences and good luck.

(**Exhibit "G",** Plaintiff Bates #1315-1316).

Even more stunning, as stated above, the plaintiff withheld this crucial information from all authorities, including the NYPD Detective who he is now suing in the New York action, even after he was arrested. Attached as **Exhibit "H"** are the text exchanges between the plaintiff and NYPD Det. Reinhold (Plaintiff Bates #00509-00520) in which the plaintiff is so bold to complain that "[t]his guy [is] still running around free . . . trying to mess up my name" and complaining that "it should be easy for you guys to catch him." None of these facts are included in the Complaint.

Indeed, in response to the Requests for Admissions served in the New York action (**Exhibit "I"**), the plaintiff admitted to the following:

> -prior to the Spring of 2018 plaintiff spent time on occasion with Mamadou Barrie (Response No.4).

> -at one point in time plaintiff considered Mamadou Barrie his friend (Response No.5)

-In the Facebook Messenger exchanges he (Bah) is "Prince Alpha" and Mamadou Barrie is "Prince Barrie". (Response No.6).

-his [Facebook messenger assertion] "You still using my shit" is an assertion of his belief that after April 14, 2018 Mamadou Barrie used the original or a copy of his New York State temporary learner's permit, or other identifying information, to falsely identify himself as plaintiff. (Response No.12).

-By November 29, 2018 [he] knew that Mamadou Barrie had falsely identified himself as [plaintiff] in connection with at least one theft from at least one Apple store. (Response No.13).

-As of November 29, 2018 [the NYC arrest] [he] had not provided the name Mamadou Barrie to law enforcement or any court or prosecuting agency in connection with identity theft or falsely identifying himself as [plaintiff].(Response No.14).

-As of October 30, 2020 [he] had not provided the name Mamadou Barrie to law enforcement or any court or prosecuting agency in connection with identity theft or falsely identifying himself as [plaintiff].(Response No.15).

-[He] discussed with NYPD Detective John Reinhold via text that someone was impersonating [him] but [he] did not tell NYPD Detective John Reinhold or any other NYPD officer via text or any other means that Mamadou Barrie may have been the person impersonating [him].(Response No.21).

-He knew Boubakar Toure (Response No.33).

Further, and although not a basis for this motion, the narrative of a "continued prosecution of the plaintiff upon SIS's learning of the incorrect identify after SIS' first court appearance for any of the thefts (LP Rakia Morgan on December 12, 2018 for the Cherry Hill theft)(¶¶133-136), is also

knowingly false, as SIS and its staff never again connected the name Ousmane Bah to any further thefts after December 12, 2018 and never once appeared in court and offered testimony accusing the plaintiff of any of the thefts.

## **RELIEF SOUGHT**

This plaintiff has contributed to, or at the very least remained complicit in, an enormous waste of police resources and judicial resources in multiple jurisdictions in multiple states, and through his attorneys he now continues to waste judicial resources and impose litigation in bad faith in the Federal Court of this District (and the Southern District of New York) to pursue actions against corporate defendants and individuals. As stated, in an effort to assert his claims or to "sweeten" the story, and notwithstanding the failure of the pleading on its face, the plaintiff is constrained to assert facts known to be false.

A Rule 11 violation is committed when a pleading is filed. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Where, as in the present case, sanctions are sought by an adversary upon a motion, the sanction may direct payment of some or all the movant's reasonable attorneys' fees and other expenses incurred as a direct result of the Rule 11 violation. F.R.C.P. Rule 11(c)(4); *Watson, supra* at 665. It is respectfully requested that this Court impose the sanction of reimbursement for the costs and reasonable attorneys' fees in defending this action

on behalf of defendants, SIS, Woodruff, and Yhap, including the costs and fees associated with this motion, if this motion must be filed, and in moving under Rule 12(b)(6) to dismiss the Complaint and for any further expenses incurred in defending this action.

Procedurally, Rule 11 contains a "safe harbor" provision allowing the offending party or attorney an opportunity to withdraw the pleading. *See Marenbach v. City of Margate*, 942 F.Supp. 2d 488, 496 (D.N.J. 2013). In accordance with that requirement, the instant motion was originally sent to plaintiff's counsel on December 22, 2020, at least 21 days in advance of its original filing. A copy of the December 22, 2020 cover letter sent concurrently with the intended motion is annexed as **Exhibit "J"**. Nevertheless, the Complaint was not withdrawn.

Prior to the filing of this renewed motion, but now directed to the First Amended Complaint, the plaintiff was sent correspondence dated May 24, 2021, annexed as **Exhibit "K"**, again providing the plaintiff 21 days advanced notice of the motion and providing an opportunity to withdraw the pleading. Aside from updating the motion to correspond with any new paragraph numbering and updating the procedural history, the motion is unchanged from the version previously sent on December 22, 2020 and then e-filed on January 12, 2021.

The First Amended Complaint has not been withdrawn.

## <u>CONCLUSION</u>

For the foregoing reasons, SECURITY INDUSTRY SPECIALISTS, INC., STEVEN YHAP and JOHN WOODRUFF, respectfully request that this Court impose sanctions it deems appropriate under Rule 11(c).

Dated:          June 14, 2021

                                    _David Metzger_____

                                    David L. Metzger, Esq.
                                    LEWIS JOHS AVALLONE AVILES, LLP
                                    Attorneys for Defendant
                                    SECURITY INDUSTRY SPECIALISTS,
                                    INC., JOHN WOODRUFF, STEVEN
                                    YHAP
                                    61 Broadway, Suite 2000
                                    New York, New York 10006
                                    212.233.7195
                                    dlmetzger@lewisjohs.com